UNTIED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
One Bowling Greene
New York, NY 10004-1408

| | |
|---|---|
| In re: Georgia Candemeres Otero<br>AKA Georgia Candemeres, aka Georgia Otero<br><br>Debtor, | **NOTICE OF MOTION IN OPPOSITION TO CREDITOR'S MOTION TO TERMINATE AUTOMATIC STAY**<br><br>Case No.: 19-31445 –smb<br>(Chapter 7)<br><br>Assigned to:<br>Hon. Stuart M. Bernstein<br>Bankrupcy Judge |

Please take notice I am Georgia Candemeres Otero the Debtor in the above action appearing Pro Se will move the Honorable Stuart M. Bernstein, on December 20, 2019 at an unspecified time for order to Opposition to Creditor's Motion to Terminate the Automatic Stay.

Yours,

DATED: December 12, 2017

By: Georgia Candemeres Otero

505 Laguardia Place
Unit 9B
New York, NY 10012

\

To:

Courtney R. Williams, Esq
Gross Polowy, LLC
1175 Wehrle Drive Suite 100
Williamsville, New York 14221

Gregory M. Messer
Chapter 7 Trustee
26 Court Street
Suite 2400
Brooklyn, NY 11242

United States Bankruptcy Court
Southern District of New York
One Bowling Greene
New York, NY 10004

United States Trustee
Office of the United States Trustee
U.S Federal Office Building
201 Varick Street Rm 1006
New York, NY 10006

UNTIED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Georgia Candemeres Otero
Aka Georgia Candemeres aka Georgia Otero
Debtor.

**DEBTOR AFFRIMATION IN OPPOSITION TO CREDITORS MOTION TO TERMINATE AUTOMATIC STAY**

Case No.: 19-31445 –smb
(Chapter 7)

Assigned to:
Hon Stuart M. Bernstein

I am the sole Debtor in the above entitled action appearing Pro Se and fully familiar with all the facts and circumstances set forth herein. As such, I submit this Affirmation under penalty of perjury.

1. Debtor's Petition filed under Chapter 7 of Title 11 § U.S.C. 101 with this Court lists U.S. Bank, National Association as Legal Title Trustee for Truman 2013 SC4 Title Trust (hereinafter US Bank) as the only "Secured Creditor."

2. Debtor further submits this Affirmation in Opposition to Rushmore Loan Management Services, LLC (referenced herein as Rushmore) as servicing agent for U.S. Banks motion seeking to terminate the automatic stay in respect to real property commonly known as 195 Maywood Drive, Mastic Beach, N.Y. 11951, attached hereto as **exhibit 1**.

3. Debtor will produce a preponderance of documentary evidence to demonstrate that Rushmore's motion should be denied and that U.S. Bank is an illegitimate "Secured Creditor" that must be disqualified and/or removed from in this matter.

## JURISDICTION

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to U.S.C. § 157(b).

## BACKGROUND FACTS

## WELLS FARGO LOAN DOCUMENTS

5. On February 15, 2008, debtor attended the loan closing at the Express Settlement offices in North Port NY. <u>Ms Karen A. Flanagan, the local Wells Fargo designated loan representative assigned to the defendant was supposed to be present at the loan closing,</u> attached hereto as **exhibit 2**.

6. At the loan closing, Ms Boccard of Express Settlement presented defendant with the loan documents. Subsequently, Debtor proceeded to execute several of the subject loan documents. During the loan closing process Ms Boccard appeared frustrated after receiving a phone call from Ms Flanagan instructing her to immediately abort the closing.

7. When questioned, Ms Boccard confirmed that Ms Flanagan would not be present, **because it was discovered that Mr. Steve Capiello was adversely in first lien position**. Ms Boccard requested the Debtor to return at a later date when the remaining unsigned loan documents would re-presented for her signature.

8. <u>The remaining loan documents were never re-presented to Debtor and the loan was funded without defendant executing the Note and delivered to Wells Fargo.</u>

9. Consequently, one or more of the debtor's signatures of the subject loan documents are forgeries and/or procured by fraud. Contrary to **the Mortgage**, the signature that appears on the Note, attached to Rushmore's motion (Exhibit "A") and attached to

2

Debtors **exhibit 1**, is NOT the Debtor's signature. That is, the signature that appears on that document, although purporting to be her signature, and faintly resembling it, is a rank forgery.

10. A facial comparison of the two (2) respective signatures on the two (2) subject loan documents reveals that they are not sufficiently similar to one another: Debtor's actual signature appears on the last page of the Mortgage also attached to **exhibit 1**.

11. Debtor's has attached a copy of her NY State Driver's License, dated October 31, 2007, prior to the period in which the forgery took place. s Debtor'submits the License as an objective image of the correct signature. Debtor would have had no reason to alter the signature on her Driver's License, attached hereto as **exhibit 3.**

12. As can be seen, the signature on Debtor's License resembles the signature on the Mortgage but it does not resemble the signature on the Note.

13. Besides this facial discrepancy, there are other compelling factors demonstrating that the purported signature on the Note is not Debtor but is a forgery: Below the forged signature on the Note is the <u>undated signature</u> of a Joan M. Mills inserted into what appears to be a corporate stamped format containing the following **"Without Recourse-Pay to The Order of Wells Fargo Bank, N.A"**.

14. In contradiction to the Note, the Mortgage contains a form of "Personal Acknowledgment." That acknowledgment is notarized by Jessica Boccard of Express Settlement. This is troubling: If the signature appearing on the Note is supposed to be defendants', why was it not notarized by anyone? Debtor never met or heard of Ms Mills and can unequivocally state that she was not present at the loan closing on February 15, 2008.

3

15.    Therefore, when and where did Ms Mills execute the Note? Certainly, Ms Mills cannot establish that the she witnessed Debtor execute the Note or related subject loan documents!

16.    If Wells Fargo were to claim that it waived the need for obtaining an acknowledgment of Debtor's signature, it will then be unable to explain why it nevertheless went through the trouble to have the Mortgage notarized.

17.    Whether or not the failure of Wells Fargo to obtain Debtor's signature on the Note was negligent or it elected to waive the requirement, Debtor cannot say. All defendant can say with certainty is that she never signed the Note in favor of Wells Fargo; the exhibit bearing what purports to be her signature thereon is a forgery.

18.    <u>Consequently, Mr. Steve Capiello remains in first lien position as further referenced below.</u>

### **WELLS FARGO, N.A. FORECLOSURE COMPLAINT**

19.    On August 6, 2010, Wells Fargo through its counsel Steven J. Baum, P.C. filed a foreclosure action in the Supreme Court of the State of New York, Suffolk County (the "State Court") reflected by Index No.28854/10, attached hereto as **exhibit 4**.

20.    Page four "Sixteenth Paragraph" of the Wells Fargo Complaint is stated accordingly "IT APPEARS FROM THE PUBLIC RECORDS THAT <u>DEFENDANT STEVE CAPIELLO HOLDS A LIEN WHICH IS ADVERSE TO THE PLAINTIFF'S INTEREST</u> AND WHICH REMAINS OPEN OF RECORD AS FOLLOW: **Recording Date: January 20, 2003 / Book/Page: 20565/680 / Suffolk County NY**"

4

21. A true copy of all Recorded Mortgages assigned to the Debtor's property reflected by Tax Map representing District-Section-Block-Lot (DSBL) # 0200-980.40-07.00-038.00 obtained on December 3, 2019 from the Suffolk County Clerk's Office further supports that Mr. Steve Capiello remains in first position as identified by **Recording Date: January 20, 2003 / Book/Page: 20565/680 / Suffolk County NY, exhibit 5.**

22. Debtor's answer was filed on **August 26, 2010** and included **counterclaims** arising from Wells Fargo's illicit and deceitful conduct that inflicted devastating injuries to defendant.

23. Consequently, Wells Fargo Bank N.A. did not serve any opposition to Debtor's **(Defendant)** answer and on January 31, 2012 Michael E. Blaine Esq. of Hogan Lovell US LLP **voluntarily discontinued the complaint (Index No. 28854/10)** on behalf of plaintiff, attached hereto as **exhibit 6**.

## INDEPENDENT FORECLOSURE REVIEW AWARD

24. Prior to the commencement of Wells Fargo's foreclosure action, Debtor enrolled in two Home Affordable Loan Modification Programs ("HMP"). Defendant fully complied with the HMP requirements by submitting the requested documents and timely making all necessary trial payments.

25. Despite complying with the guidelines set forth in the HMP, Wells Fargo failed to apply payments in the sum of approximately $37,292.65 towards defendants account during the both trial periods.

26. Subsequently, on December 6, 2009 Wells Fargo forwarded an acceleration letter to Debtor's demanding additional monthly payments, late charges and other charges totaling

5

$19,872.27. <u>A host of verbal and written communication ensued between defendant and Wells Fargo representatives, which in turn lead to agreements that were not honored by the lender.</u>

27. Debtor's second HMP resulted in additional monthly trial payments under the conditions as set forth therein. Wells Fargo accepted said payments and forwarded another acceleration letter claiming a total delinquency of $21,045.10 was due and demanded immediate payment thereof.

28. Wells Fargo deliberately ignored defendant's previous written request to produce account statements and provide a reason for the HMP disqualifications. Debtor protested Wells Fargo's demand for payment and forwarded additional correspondence requesting account statements and explicitly expressing how Wells Fargo's overwhelmingly deceptive business practices caused s Debtor severe emotional distress.

29. Debtor believed she was entering into a legitimate Loan Modification program. Instead, <u>Wells Fargo intentionally induced the borrowers account to remain in default</u>, thereby unfairly incurring substantial service and late fees.

30. Wells Fargo and its agent's immeasurable effort to avert reinstatement of defendant's loan unquestionably inflicted devastating financial and emotional injury on the Debtor. The unanticipated financial and emotional burdens arose from the cost of repairing extensive property damages, countless legal fees and psychiatric treatment.

31. Therefore, on July 30, 2012, Debtor filed a claim with The Independent Foreclosure Review against Wells Fargo for errors, misrepresentations, and/or other deficiencies made during the foreclosure process. The Independent Foreclosure Review awarded Debtor $2,000.00, attached hereto as **exhibit 7.**

## U.S. BANK COMPLAINT

6

32. U.S. Bank <u>alleges</u> that both the Note and Mortgage were assigned in writing and endorsed in Blank. Ultimately, on February 18, 2014, Wells Fargo assigned the Mortgage to U.S. Bank by way of a "Corporate Mortgage Assignment."

33. On <u>August 21, 2014, a second foreclosure action was commenced against Debtor by US Bank in "State Court" referenced under Index No.066751/14.</u>

34. Debtor retained Mr. William Grausso Esquire to <u>defend</u> her against US Bank's foreclosure action by <u>asserting</u> that one or more of the signatures of the subject loan documents were forged and to pursue counterclaims by way of a Third Party Complaint against <u>Wells Fargo</u> for their unconscionable acts referenced herein.

35. Mr. Grausso's initial enthusiastic assurances of prevailing against US Bank were based on the grounds of Wells Fargo's fraudulent business practices.

36. Thereafter, Mr. Grausso consistently ignored Debtor's calls during critical times and when he did respond, it was generally hours before the expiration of a deadline, which in turn **<u>created untenable results and unnecessary emotional stress.</u>**

37. Despite defendant providing Mr. Grausso countless documents to support her defense and relevant claims, he resorts to submitting the Verified Answer <u>without them</u> and neglected to raise their significance at the settlement conference.

38. Moreover, Mr. Grausso asserts plaintiff engaged in deceptive business practices, but fails to present triable issues of fact, such as the rank forgery of the Note and other serious misleading practices committed by a powerful financial company that exerted its will over the defendant.

7

39. Making matters worse, demand for discovery was never conducted; Wells Fargo was not joined as a necessary party in this action and **US Banks' overriding business records substituted relevant facts intended to disadvantage the defendant**.

40. On or about January 29, 2018, plaintiff's motion for Summary Judgment and Related Relief was granted. Consequently, on February 28, 2018, Debtor terminated the attorney-client relationship by Order To Show Cause which was granted without opposition on May 21, 2018, by Justice Pastoressa.

41. On August 1, 2018, plaintiff filed an amended Motion to Confirm Referee Report and Judgment of Foreclosure and Sale containing the **wrong DSBL No**. Thereafter, Debtor appearing Pro-Ser filed its Opposition to plaintiff's Amended Motion to Confirm Referee Report and Judgment of Foreclosure and Sale on September 26, 2019.

42. Subsequently, plaintiff filed a Notice of Withdrawal on December 3, 2018 and n or about February 7, 2019, plaintiff filed **a second** Motion to Confirm Referee Report and Judgment of Foreclosure and Sale also containing **wrong DSBL No**. Therefore, on April 2, 2019, Debtor filed its opposition papers pursuant to CPLR 5015 (b) and (c).

43. On July 31, 2019, Plaintiff's Motion for Summary Judgment of Foreclosure and Sale was granted, attached hereto as **exhibit 8**. Debtor received an email alert from the Unified Court System (E-Courts) attached as **exhibit 9**.

44. Debtor manually checked E-Courts for "**Entry**" of Order Confirming Referee Report and Judgment of Foreclosure and Sale from August 1, 2019 through August 24, 2019.

45. Ultimately, on or about August 27, 2019 Debtor eventually discovered the Order Confirming Referee Report and Judgment of Foreclosure and Sale **was stamped with an Entered date of August 15, 2019,** attached hereto as **exhibit 10**.

46. Debtor points to **exhibit 10** printed from E-Courts to demonstrate that it is missing the NYCEF indentifying markers that are stamped on all electronically filed court

8

documents clearly, but visible in **exhibit 8** (Judges Order Granting Plaintiff's Motion for Summary Judgment)

47. Moreover, an email alert from E-Courts never came and Debtor was not served The Order Confirming Referee Report and Judgment of Foreclosure and Sale.

48. Making matters more perplexing, Debtor's Opposition to plaintiff's Amended Motion to Confirm Referee Report and Judgment of Foreclosure and Sale pursuant to CPLR 5015 (b) and (c) filed on April 2, 2019 explicitly supports sweeping and systemic errors, misrepresentations and / or other deficiencies evident throughout the foreclosure action was inexplicably denied by State Court.

49. In conclusion, Debtor resorted to filing for Bankruptcy on September 4, 2019 to halt the foreclosure process out sheer trepidation during an intensive medical treatments/procedures schedule at Bellevue Hospital under the World Trade Center Health Program for (PTSD) and physiological illnesses, referenced in "Debtor's Emergency Motion to Extend Time to File Schedules and Statements" attached hereto as **exhibit 11**.

## **LEGAL STANDANDARDS**

50. The Bankruptcy Code imposes an automatic stay of nearly all litigation against the Debtor. 11 U.S.C § 362(a). But a party in interest can seek relief from an automatic stay "for cause including lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). Alternatively, with regards to real property, a party in interest can move to lift the automatic stay when a Debtor has no equity in interest in the property and the property is not subject to reorganization of the estate. 11 U.S.C. § 362(d)(2). Sections 362(d)(1)(2) are disjunctive. Therefore, "the Court must lift the stay if the movant prevails under either of the two grounds." In re Elmira Litho, Inc., 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (collecting cases)

## **LEGAL ARGUMENT**

51. On November 20, 2019, counsel for Rushmore as servicer for U.S. Bank as Legal Title Trustee for Truman 2013 SC4 Title Trust, alleged to be the holder of the Note and Mortgage on the Debtor's Property filed a Motion for relief from the Automatic Stay, attached hereto as **exhibit 1**

52. The Rushmore Motion seeks to enforce U.S. Bank's right to continue an action to foreclose on the property stating that there is cause to lift the automatic stay under 11 U.S.C. 362(d) because adding the homeowner's exemption along with broker fees, property taxes, insurance and related matters, "there is no equity in the premises."

53. The motion is supported by (Exhibit A) Note, Mortgage and **"Corporate Assignment of Mortgage"** from Wells Fargo, Bank N.A. (Exhibit B) a Declaration from David Ha, an Assistant Secretary at Rushmore, and (Exhibit C) a Borker Price Opinion ("BPO").

54. Contrary to US Bank submission of a "Corporate Assignment of Mortgage" from Wells Fargo Bank, N.A., the original mortgagee, **there is no evidence on an assignment, allonge, or delivery of a Note "Endorsed in Blank" in support of their Motion**.

55. The Motion **does not include a Note endorsed in Blank** or an affidavit, declaration, or any document establishing that U.S. Bank, on whose behalf Rushmore is acting, holds the original Note endorsed in Blank.

56. The alleged Debt being pursued by U.S. Bank is inaccurate because it does account for payments made to the original Mortgagee (Wells Fargo ) in the approximate amount of $37,500.00.

57.     Because demand for discovery was not conducted and Wells Fargo was not joined as a necessary party in this action **US Bank illicitly refers to and uses overriding business records intended to substitute relevant facts that disadvantage the Debtor**.

58.     Moreover, David Ha who has signed the Declaration for Rushmore in support of Rushmore's Motion has no first-hand knowledge of the facts.

## STANDING TO SEEK RELIEF FROM AUTOMATIC STAY

59.     "Standing is threshold issue for a court to resolve." In re Indicula, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) (citation omitted). "A Lift stay motion cannot be nbrought by a stranger to the case." In re sterling, 2018 WL 313085 AT *3 (Bankr. S.D.N.Y. Jan. 2018) (quoting in Re Escobar, 457 B.R. 229, 236) (Bnkr. S.D.N.Y. 2011)). It is wll settled that under 362(d), a request to lift the automatic stay must be made by a "party in interest." In re Lippold, 457 B.R. 293, 296 (Bankr. S.D.N.Y. 2011). While the term "party in interest" is not defined in the Bankruptcy Code, the Second Circuit stated that, "in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party[must] be either a creditor or a debtor." In re Mims; 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010) citing in Re Comcoach, 689 F.2d 571, 573 (2d Cir. 1983))

60.     Section 101(10) of the Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(1)(A). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." 11 U.S.C. § 101(5)(A).

11

61. Courts in this jurisdiction have made clear that a party can demonstrate a "right to payment" by showing that it holds the ability to seek the state law remedy of foreclosing on a property. See Mims, 438 B.R. at 56 (citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor)); see also Escobar, 457 B.R. at 239 (explaining that "the evidence necessary to establish standing to seek stay relief or commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable law to enforce the mortgage . . .").

62. "Under New York law, a plaintiff has standing to commence a mortgage foreclosure action 'where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced.'" Lippold, 457 B.R. at 296–97 (quoting Bank of N.Y. v. Silverberg, 926 N.Y.S.2d 532, 536 (2d Dep't 2011)). "While the transfer of the mortgage without the promissory note is a nullity, once a promissory note is transferred from assignor to assignee, 'the mortgage passes as an incident to the note.'" Id. at 297 (quoting Silverberg, 926 N.Y.S.2d at 537); see also Escobar, 457 B.R. at 240 (stating that "New York law has long recognized that the rights under a mortgage lien are beneficially 7 transferred to the assignee of a promissory note, without the execution of a written assignment of the mortgage, and even without a written assignment of the mortgage").

63. In New York, there are several ways a movant can prove it is the holder of a note. See, e.g., Idicula, 484 B.R. at 288 (describing methods for transferring a note under New York law). A movant can "prove that [it holds the note] by providing the Court with proof of a written assignment of the Note," or "by demonstrating that [it] has physical possession of the Note endorsed over to it." Escobar, 457 B.R. at 240 (citation omitted); see also Mims, 438 B.R. at 56.

12

64.     Transfer of a note may be accomplished through an allonge firmly affixed to the note. See In re Sterling, 2018 WL 313085, at *4 (citations omitted). If a note is endorsed in blank, the movant must show that it, or the party on whose behalf it acts, has possession of the original note endorsed in blank. See Idicula, 484 B.R. at 287, 289.

## CAUSE FOR GRANTING RELIEF FROM THE AUTOMATIC STAY

65.     In addition to establishing standing, to prevail on a motion to lift the automatic stay under 362(d) a movant must establish its prima facie case that there is cause to lift the stay. A prima facie case that a party lacks adequate protection under section 362(d)(1) can be satisfied by showing (i) a quantitative decline in value of a property, or (ii) that the debtor has failed to make numerous post-bankruptcy payments. See Elmira Litho, 174 B.R. at 902–04. A prima facie case under section 362(d)(2) requires a showing that the debtor has no equity in the property and that the property is not necessary to the reorganization of the estate. See 11 U.S.C. § 362(d)(2).

66.     If a movant fails to demonstrate its prima facie case, the court must deny the request to lift the stay. 3 COLLIER ON BANKRUPTCY ¶ 362.10 (16th ed. 2016). Once the creditor makes a prima facie 8 case, the burden shifts to the debtor on all other issues. Elmira Litho, 174 B.R. at 902; 3 COLLIER ON BANKRUPTCY ¶ 362.10.

67.     Courts may find that there is adequate protection for a secured creditor where there is equity in the property, but the equity cushion must be significant. See In re Rorie, 98 B.R. 215, 221 (Bankr. E.D. Pa. 1989) (stating that in determining whether the equity cushion provides adequate protection, the court considers factors such as "the size of the cushion; the rate at which the cushion will be eroded; and whether periodic payments are to be made to prevent or mitigate the erosion of the cushion" and holding that an equity cushion valued at 42% of the

claim is sufficient to provide adequate protection); In re McKillips, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) (explaining that "an equity cushion of 20% or more constitutes adequate protection," while "an equity cushion under 11% is insufficient to provide adequate protection") ; In re James River Assoc., 148 B.R. 790, 796 (E.D. Va. 1992) (holding that a 2% equity cushion is insufficient to provide adequate protection because of the deterioration of the equity cushion from accumulating interest).

68. To succeed on a section 362(d)(2) motion, a secured creditor must establish that the debtor has no equity in the property and that the property is not necessary for an effective reorganization. See Elmira Litho, 174 B.R. at 900 (collecting cases). Courts use simple arithmetic to calculate the equity in a property, subtracting the total claims from the value of the property. If the value of claims against a property exceeds the value of the property, the debtor has no equity in the property. See 3 COLLIER ON BANKRUPTCY ¶ 362.07[4][a].

69. If the movant shows that the debtor lacks equity in the property, the debtor must then show "that there [is] a reasonable possibility of a successful reorganization within a reasonable time" and that the property is "essential" to such a reorganization.

## CONCLUSION

70. Rushmore's motion fails to establish that U.S. Bank is a "party in interest" under 11 U.S.C. 362(d) and that Rushmore has standing to enforce U.S. Bank's right to foreclose on the Property. As described above, no evidence has been offered to support that U.S. Bank holds the Note. Furthermore, no assignment of the Note is shown and no affidavit or declaration (or

any document submitted in support of the Motion) establishes that U.S. Bank holds the original Note endorsed in any form.

71.     Rushmore's counsel cannot support standing to lift the automatic stay to continue a foreclosure action. In Mims, for example, this Court held that Wells Fargo Bank, N.A. lacked standing to seek relief from the automatic stay because it failed to advance proof that it was the owner of a promissory note given with a mortgage, as it did not provide evidence that "the Note was physically delivered or assigned pursuant to a written agreement." 438 B.R. at 56.

72.     Likewise, in Lippold, this Court held that U.S. Bank failed to establish its standing to lift the automatic stay, as it failed "to provide satisfactory proof of its status as the owner or holder of the note at issue." 457 B.R. at 299. In Idicula, the Court once again outlined the requirements for establishing standing to foreclose on property. 484 B.R. at 287–88. There, the movant, servicing agent Select Portfolio Servicing, Inc., argued that U.S. Bank held the right to enforce a promissory note securing the property at 10 issue because the note was transferred to U.S. Bank by way of an allonge. Id. at 286. The Court held that the purported allonge could not support U.S. Bank's standing because the allonge was never submitted in evidence. Id. at 298.

73.     Moreover, U.S. Bank lacked standing because it did not establish that the note at issue, which was endorsed in blank, was physically delivered and currently possessed by U.S. Bank. Id. And most recently, in Sterling, the Court once again emphasized the standing requirement and the various methods by which to establish standing. 2018 WL 313085, at *2–3. The law on this issue is well-settled, and it is clear under this Court's precedents that the Motion fails to support the movant's standing.

74.     Rushmore submitted a BPO, which is not competent evidence of the property's value. Rushmore's BPO by "Asset Val" estimates the fair market value of the property at

15

$155,000 as of January 18, 2018. The Motion alleges that the balance of the mortgage debt at the petition date was $391,423.39. Using either the Debtor's estimate of the value of the Property, or the estimate in the "Asset Val" BPO, the record raises questions whether the Debtor has a sufficient equity cushion in the Property to support denial of the Motion at least for sufficient time to allow the Debtor to pursue Loss Mitigation if properly triggered. One thing is clear; a foreclosure sale of the Property most likely would not maximize the value of the Property to the Debtor's estate.

75. The alleged Debt being pursued by U.S. Bank is inaccurate because it does account for payments made to the original Mortgagee (Wells Fargo) in the approximate amount of $37,500.00.

76. Because demand for discovery was not conducted and Wells Fargo was not joined as a necessary party in this action **US Bank illicitly refers to and uses overriding business records intended to substitute relevant facts that disadvantage the Debtor**.

77. Moreover, David Ha who has signed the Declaration for Rushmore in support of Rushmore's Motion has no first-hand knowledge of the facts.

78. Since defendant did not sign the Note, it cannot be enforced against her personally as it fails to comply with the Statute of Frauds, G.O.L. 5-701(a) (2); see Shulman v. Westchester Mechanical Contractors, Inc. 56 A. 2d 625 (2d Dept. 1977).

79. A court may, in the exercise of its equitable powers, set aside a foreclosure sale where there is evidence of fraud, collusion, mistake, or misconduct (see Northern Blvd Corona, LLC v Northern Blvd Prop., LLC, 157 AD3d 895,896; U.S. Bank N.A. v Testa, 140 AD3d 855, 856; Bank of N.Y. Trust Co. v Gonzalez-Salinas, 89 AD3d 779,779).

WHEREFORE, the Debtor respectfully request that the Court enters the proposed Order attached hereto as **Exhibit A,** (a) grant this motion; and (b) grant the Debtor such other and further relief as this Court deems appropriate.

Dated: December 12, 2019

Georgia Candemeres Otero
505 LaGuardia Place
Apt 9B
New York, NY 10012
Phone (212) 255 0469

UNTIED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
One Bowling Greene
New York, NY 10004-1408

| | |
|---|---|
| In re:  Georgia Candemeres Otero<br>Aka Georgia Candemeres | Case No.: 19-12834 –smb<br>Chapter 7 |

## ORDER GRANTING DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO TERMINATE AUTOMATIC STAY

Upon consideration of the Debtors Opposition to Creditor's Motion to Terminate the Automatic Stay ("the Motion") filed by the above-captioned debtor and debtors-in possession (collectively, the "Debtors"): and this Court being satisfied that the relief requested in this Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest: and after consideration of any oppositions filed thereto: and it appearing that adequate notice thereof was provided and that no other or further notice need to be given; and after due deliberation, and sufficient cause appearing therefore: and after any hearing held thereon; it is therefore, by the United States Bankruptcy Court for the Southern District of New York, hereby:

ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

3. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019        _____

New York, N.Y.                         UNITED STATES BANKRUPTCY JUDGE