# Exhibit 1



**Gross Polowy**
L L C
Formed in the State of Delaware

1775 Wehrle Drive, Suite 100
Williamsville, New York 14221
Phone (716)204-1700
Fax (716)204-1702
http://www.GrossPolowy.com/

November 20, 2019

Clerk, United States Bankruptcy Court
Southern District Of New York
One Bowling Green
6th Floor
New York, NY 10004

Re:      Rushmore Loan Management Services, LLC as servicing agent for U.S. Bank, National
         Association as Legal Title Trustee for Truman 2013 SC4 Title Trust vs. Georgia Candemeres
         Otero aka Georgia Candemeres, aka Georgia Otero, et al.
Case No.   19-12834-smb

Dear Sir or Madam:

Enclosed herewith please find a Chamber's Copy of a Notice of Motion, Application, and Affidavit of
Mailing of same filed by Gross Polowy, LLC. Also enclosed herewith please find an original and one copy of a
proposed Order.

Please note that the motion has been scheduled for December 17, 2019 at 10:00 am in New York, New
York.

If you have any questions, please feel free to call.

Very truly yours,

By:     Courtney R Williams, Esq

Enc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

Georgia Candemeres Otero
aka Georgia Candemeres, aka Georgia Otero

               Debtor.

**NOTICE OF MOTION FOR
TERMINATION OF AUTOMATIC STAY**

Case No.: 19-12834-smb
(Chapter 7)

Assigned to:
Hon. Stuart M. Bernstein
Bankruptcy Judge

Please take notice that Rushmore Loan Management Services, LLC as servicing agent for U.S. Bank, National Association as Legal Title Trustee for Truman 2013 SC4 Title Trust, a secured creditor of Debtor, by the undersigned attorneys, will move this Court on November 1, 2019 at an unspecified time or as soon thereafter as counsel can be heard, at the United States Bankruptcy Court, One Bowling Green, 6th Floor, New York, NY 10004 for an Order pursuant to 11 U.S.C. §362(d)(1) and 11 U.S.C. §362(d)(2) terminating the automatic stay as to movant's interest in real property commonly known as 195 Maywood Drive, Mastic Beach, NY 11951 and for such other relief as the Court may deem proper.

DATED:    November 20, 2019
              Williamsville, New York

Yours,

By:    *Courtney R Williams*

Courtney R Williams, Esq.
GROSS POLOWY, LLC
Attorneys for Secured Creditor
Rushmore Loan Management Services, LLC as
servicing agent for U.S. Bank, National
Association as Legal Title Trustee for Truman
2013 SC4 Title Trust
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221
Telephone (716)204-1700

TO:

| | |
|---|---|
| Georgia Candemeres Otero<br>aka Georgia Candemeres,<br>aka Georgia Otero<br>505 Laguardia Pl Unit 9B<br>New York, NY 10012 | Pro Se Debtor |
| Gregory M. Messer<br>26 Court Street<br>Suite 2400<br>Brooklyn, NY 11242 | Chapter 7 Trustee |
| United States Trustee<br>Office of the United States Trustee<br>U.S. Federal Office Building<br>201 Varick Street, Room 1006<br>New York, NY 10014 | U.S. Trustee |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

**AFFIRMATION**

In Re:

Georgia Candemeres Otero
aka Georgia Candemeres aka Georgia Otero
         Debtor.

Case No.: 19-12834-smb
(Chapter 7)

Assigned to:
Hon Stuart M. Bernstein
Bankruptcy Judge

---

I, Courtney R Williams, Esq. am an attorney duly licensed to practice law in the Courts of this State and in the United States Bankruptcy Court for the Southern District of New York and hereby state as follows:

1.     I submit the within Affirmation under penalty of perjury in support of the motion of Rushmore Loan Management Services, LLC as servicing agent for U.S. Bank, National Association as Legal Title Trustee for Truman 2013 SC4 Title Trust ("Secured Creditor"), a Secured Creditor of the above-referenced Debtor, to terminate the automatic stay in this case with respect to the real property commonly known as 195 Maywood Drive, Mastic Beach, NY 11951.

2.     Secured Creditor is the holder of a note executed by Georgia Candemeres on or about the 15th day of February, 2008 in the principal amount of $172,000.00 and interest (the "Note"), secured by a mortgage bearing even date therewith, which is recorded in the Office of the Suffolk County Clerk on the 8th day of April, 2008 in Liber M00021693 of Mortgages at Page 236 (the "Mortgage") covering the premises commonly known as 195 Maywood Drive, Mastic Beach, NY 11951 (the "Mortgaged Premises"). A copy of the Note, Mortgage and Assignment, is annexed hereto as **Exhibit 'A'**.

3.     On the 4th day of September, 2019 Debtor Georgia Candemeres Otero aka Georgia Candemeres, aka Georgia Otero filed a Petition under Chapter 7 of Title 11 U.S.C. §101 et seq with this Court, and an Order for relief was duly entered.

4.    The Note and Mortgage provide that the Debtor will be in default if they do not make full monthly payments on each due date. As of September 17, 2019, the Debtor is due for 124 payments in the amount of $1,708.11 each for the months of June 1, 2009 to September 1, 2019 and has not cured said default. Furthermore, 1 payment due on October 1, 2019, November 1, 2019 and December 1, 2019 will be due at the date this motion is heard. A Motion for Relief from Stay Worksheet is attached hereto as **Exhibit 'B'**.

5.    As of the 17th day of September, 2019 there is a total indebtedness on the Note and Mortgage in the sum of $391,423.39. Interest on the unpaid principal balance will continue to accrue, and to protect its security in the Mortgaged Premises Secured Creditor may be required to make advances for property taxes, insurance and related matters.

6.    Based on the BPO attached hereto as **Exhibit 'C'**, said real property is valued at $155,000.00. Based on the Secured Creditor's lien amount and the value of the Mortgaged Premises, there is no equity in the premises.

7.    Section 362(d)(1) of the Bankruptcy Code provides in pertinent part that the Court shall grant relief from the stay imposed by Section 362(a) "for cause, including lack of adequate protection of an interest in property..." As set forth above, cause exists to vacate the automatic stay as the Debtor has failed to make monthly mortgage payments to Secured Creditor.

8.    Furthermore, Section 362(d)(2) of the Bankruptcy Code provides in pertinent part that the Court shall grant relief from stay imposed by Section 362(a) if "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." See, 11 U.S.C. § 362(d)(2)(A)-(B). Therefore, the Secured Creditor is entitled to relief pursuant to 11 U.S.C. § 362(d)(2) as there exists no equity in the Premises after costs of sale. The Secured Creditor submits that the Mortgaged Premises are not necessary for the effective reorganization of the Debtor as the instant case is a Chapter 7 liquidation case.

9.      A copy of a proposed Order granting the relief sought by Secured Creditor is annexed hereto as **Exhibit 'D'**.

10.      In the event that this motion is scheduled to be heard beyond the time-period set forth in 11 U.S.C. Section 362(e) or is subsequently adjourned beyond said time period, Secured Creditor hereby waives its rights under 11 U.S.C. Section 362(e) and agrees to be bound by the Order of the Court on the instant Motion.

11.      No prior application has been made for the relief requested herein.

**WHEREFORE**, Secured Creditor respectfully requests that an Order be granted terminating the automatic stay immediately as to Secured Creditor's interest in the Mortgaged Premises together with such other, further and different relief as the Court may deem just in this matter.

DATED:      November 20, 2019
            Williamsville, New York

Yours,

By:  _____
Courtney R Williams, Esq
GROSS POLOWY, LLC
Attorneys for Secured Creditor
Rushmore Loan Management Services, LLC as servicing agent for   U.S. Bank, National Association as Legal Title Trustee for Truman 2013 SC4 Title Trust
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221
Telephone (716)204-1700

# NOTE

FEBRUARY 15, 2008                    NORTHPORT                        NEW YORK
|Date|                              |City|                          |State|

195 MAYWOOD DRIVE, MASTIC BEACH, NY 11951

                            |Property Address|

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****172,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.125    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST    day of each month beginning on APRIL 01, 2008        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 01, 2038        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701                                    or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ ********1,045.09

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(NY) (0005)         Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      2.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N(NY) (0005)                    Page 2 of 3                    Form 3233 1/01
                                                                Initials

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
GEORGIA CANDEMERES                -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                      -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF                         [Sign Original Only]

WELLS FARGO BANK, N.A.
BY Joan M Mills
Joan M. Mills, Vice President

-5N(NY) (0006)          Page 3 of 3          Form 3233 1/01



## SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

**Type of Instrument:** MORTGAGE/MMM       **Recorded:**   04/08/2008
**Number of Pages:** 19       **At:**       12:43:24 PM
**Receipt Number :** 08-0032168
**MORTGAGE NUMBER:** ▓▓▓▓▓       **LIBER:**    M00021693
      **PAGE:**      236

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0200 | 980.40 | 07.00 | 038.000 |

EXAMINED AND CHARGED AS FOLLOWS
**Mortgage Amount:**      $172,000.00

**Received the Following Fees For Above Instrument**

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $57.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Notation | $0.00 | NO |
| Cert.Copies | $0.00 | NO | RPT | $30.00 | NO |
| Mort.Basic | $860.00 | NO | Mort.Addl | $486.00 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $430.00 | NO |
| | | | Fees Paid | $1,888.00 | |

**MORTGAGE NUMBER:** ▓▓▓▓▓

**THIS PAGE IS A PART OF THE INSTRUMENT**
**THIS IS NOT A BILL**

Judith A. Pascale
County Clerk, Suffolk County

| 1 | 2 |

Number of pages **9**

This document will be public record. Please remove all Social Security Numbers prior to recording.

RECORDED
2008 Apr 09 12:43:24 PM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L M00021693
P 236
C2001617

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | FEES | |
|---|---|---|

Page / Filing Fee _____

Handling    5.00

TP-584 _____

Notation _____

EA-52 17 (County) _____    Sub Total _____

EA-5217 (State) _____

R.P.T.S.A.    30.00

Comm. of Ed.    5.00

Affidavit _____

Certified Copy _____

NYS Surcharge    15.00    Sub Total _____

Other _____    Grand Total    112.00

Mortgage Amt. 170,000

1. Basic Tax _____
2. Additional Tax _____

Sub Total _____

Spec./Assit.
or
Spec. /Add. _____

TOT. MTG. TAX 1,740

Dual Town _____ Dual County _____

Held for Appointment _____

Transfer Tax _____

Mansion Tax _____

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES ✓ or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist. | 0200 98040 0700 038000   8.000 | 5 | Community Preservation Fund |
|---|---|---|---|---|

Real Prop Tax Servic Agency Verificatio

P T S
R LPA A
08-APR-08

Consideration Amount $ _____

CPF Tax Due    $ _____

Improved _____

Vacant Land _____

TD _____

TD _____

TD _____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

**RECORD & RETURN TO:**

WFHM Final Docs - 01M
X 9999-01M
1000 Blue Gentian Road
Eagan MN 55121

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
|---|---|

Co. Name CIS Abstract

Title # _____

| 8 | **Suffolk County Recording & Endorsement Page** |
|---|---|

This page forms part of the attached    m t    made by:
(SPECIFY TYPE OF INSTRUMENT)

Wells Fargo

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

In the TOWN of Brookhaven

Georgia Bondemers

In the VILLAGE
or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

# IMPORTANT NOTICE

If the document you've just recorded is your **SATISFACTION OF MORTGAGE**, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, *you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.*

Local property taxes are payable twice a year:  on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095, Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk

Return To:
WFHM FINAL DOCS X9999-01M
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

Prepared By:
WELLS FARGO BANK, N.A.

*mp*
*1806.*

179 SULLY'S TRAIL, SUITE 180,
PITTSFORD, NY  145340000

————————————[Space Above This Line For Recording Data]————————————

# MORTGAGE

*0300*
*980.40*
*07.00*
*038.000*

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated **FEBRUARY 15, 2008** ,
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower," **GEORGIA CANDEMERES, A MARRIED PERSON**

whose address is 195 MAYWOOD DRIVE, MASTIC BEACH
NY 11951                                      sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." **WELLS FARGO BANK, N.A.**

will be called "Lender." Lender is a NATIONAL ASSOCIATION          which exists under the laws
of THE UNITED STATES                    . Lender's address is P.O. BOX 11701, NEWARK,
NJ  071014701

▆▆▆▆▆▆▆▆

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01
▆▆-6(NY) (0005)
Page 1 of 17    Initials *GP*
VMP MORTGAGE FORMS - (800)521-7291

The real property covered by this
mortgage is or will be improved by
only a one or two family residence
or dwelling.

(D) "Note." The note signed by Borrower and dated **FEBRUARY 15, 2008** , will be called the "Note." The Note shows that I owe Lender **ONE HUNDRED SEVENTY TWO THOUSAND AND 00/100**

Dollars (U.S. $****172,000.00 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **MARCH 01, 2038**

(E) "Property." The property that is described below in the section titled "Description of the Property." will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

-6(NY) 10008:    Page 2 of 17    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at
195 MAYWOOD DRIVE                                                                    [Street]
MASTIC BEACH                    [City, Town or Village] , New York 11951        [Zip Code].
This Property is in SUFFOLK                                        County. It has the following legal description:
SEE ATTACHED LEGAL DESCRIPTION HERETO AND MADE A PART HEREOF

TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

-6(NY) (0005)                        Page 3 of 17                        Form 3033 1/01

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it becomes due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

-6(NY) (0006)                     Page 4 of 17            Initials _____            Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charges. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any); hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following Items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

NY)(0000s)    Page 5 of 17    Initials    Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under any lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

‑6(NY) (0005)                         Page 6 of 17                                    Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property. If the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (c) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action. If Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights if the Property is Sold or Transferred.** Lender may require immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6(NY) (0806)                          Page 12 of 17              Initials: _____          Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

NY (0008)                Page 16 of 17                Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:



_____                    _____ (Seal)
                                           GEORGIA CANDELORIUS    -Borrower

_____                    _____ (Seal)
                                                                  -Borrower

_____ (Seal)             _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)             _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)             _____ (Seal)
                        -Borrower                                 -Borrower

-6(NY) (0005)                    Page 16 of 17                    Form 3033 1/01



**STATE OF NEW YORK,**                                    County ss: **Suffolk**

On the **15th** day of **February**, **2006** before me, the undersigned, a notary public in and for said state, personally appeared **GEORGIA CANDEMERES**

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Jessica Boccard*
Notary Public

Tax Map Information:

JESSICA BOCCARD
Notary Public, State of New York
No. 01BO6171580
Qualified in Suffolk County
Commission Expires July 23, 2011



-6(NY) (0005)                    Page 17 of 17            Initials    Form 3033 1/01

**CIS ABSTRACT INC.**                    Title:

### SCHEDULE A

All that Certain plot, piece, or parcel of Land with the
Buildings and Improvements thereon erected, situate, lying and
being in the Town of Brookhaven, County of Suffolk, and State of
New York, known and designated as and by Lot Nos. 2985, 2986,
2987, 2988, 2989, 2990 on a certain map entitled, "Sixth Map of
Mastic Beach" and filed in the Office of the Clerk of the County
of Suffolk on November 10, 1932 as Map No. 1105.



CIS ABSTRACT
1019 Ft. Salonga Rd.
Suite 103
Northport, NY 11768
1 888 TiTLENY



### SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE        Recorded:    04/17/2014
Number of Pages: 2                                At:          09:06:38 AM
Receipt Number : 14-0049442

                                                 LIBER:     M00022480
                                                 PAGE:        817

District:          Section:           Block:              Lot:
0200               980.40             07.00              038.000
                   EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument
                                    Exempt                                 Exempt
    Page/Filing       $10.00        NO      Handling        $20.00         NO
    COE                $5.00        NO      NYS SRCHG        $15.00         NO
    Notation           $0.50        NO      Cert.Copies       $0.00         NO
    RPT               $60.00        NO
                                            Fees Paid       $110.50
             THIS PAGE IS A PART OF THE INSTRUMENT
                  THIS IS NOT A BILL

                    JUDITH A. PASCALE
                    County Clerk, Suffolk County

| 1 | 2 |

**Number of pages** 2

This Document will be public record. Please remove all Social Security Numbers prior to recording.

RECORDED
2014 Apr 17 09:06:38 AM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00022480
P 817

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

**3 | FEES**

| | |
|---|---|
| Page / Filing Fee | 10 |
| Handling | 20 00 |
| TP-584 | |
| Notation | N 50 |
| EA-52 17 (County) | Sub Total 30.50 |
| EA-5217 (State) | |
| R.P.T.S.A. | 60 |
| Comm. of Ed. | 5 00 |
| Affidavit | |
| Certified Copy | |
| NYS Surcharge | 15 00 |
| Other | Sub Total 80 |
| | GRAND TOTAL 110.50 |

| | |
|---|---|
| Mortge Amt. | |
| 1. Basic Tax | |
| 2. Additional Tax | |
| Sub Total | |
| Spec./Assit. Or Spec./Add. | |
| TOT. MTG. TAX | |
| Dual Town ____ Dual County ____ | |
| Held for Appointment | |
| Transfer Tax | |
| Mansion Tax | |

The property covered by this Mortgage is or will be improved by a one or two family dwelling only.
YES ____ or NO ____
If NO, see appropriate tax clause on page # ____ of this instrument.

| 4 District | | 5 | Community Preservation Fund |
|---|---|---|---|

2695314    0200 98040 0700 038000

Real Property Tax Service Agency Verification

P T S R JME A 19-MAR-14

Consideration Amount $
CPF Tax Due $
Improved ____
Vacant Land ____
TD ____
TD ____
TD ____

**6** Satisfaction/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:
ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #100
MAC N9287-011
MINNEAPOLIS MN 55121-4400

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

**7 | Title Company Information**
Co. Name
Title #

**8** ## Suffolk County Recording & Endorsement Page

This page forms of the attached    CORPORATE ASSIGNMENT OF MORTGAGE    made by:
( SPECIFY TYPE OF INSTRUMENT )

WELLS FARGO BANK, N.A.

The premises herein situated in

SUFFOLK COUNTY, NEW YORK.

**TO**
U.S. BANK N.A. AS LEGAL TITLE TRUSTEE FOR
TRUMAN 2013 SC4 TITLE TRUST

In the Township of    Brookhaven

In the VILLAGE

or HAMLET of

BOXES 5 THRU 9 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #100
MAC N9287-011
MINNEAPOLIS, MN  55121-4400

## CORPORATE ASSIGNMENT OF MORTGAGE

Suffolk, New York
"CANDEMERES"

Date of Assignment: February 14th, 2014
Assignor: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328
Assignee: U.S. BANK N.A. AS LEGAL TITLE TRUSTEE FOR TRUMAN 2013 SC4 TITLE TRUST at 15480 LAGUNA
CANYON ROAD, SUITE 100, IRVINE, CA  92618
Executed By: GEORGIA CANDEMERES, A MARRIED PERSON  To: WELLS FARGO BANK, N.A.
Date of Mortgage:  02/15/2008 Recorded:  04/08/2008  in Book/Reel/Liber: M00021693 Page/Folio: 236  in the
County of Suffolk, State of New York. Instrument No.: CZ001617

Section-Block-Lot 980.40-07.00-038.000

Property Address: 195 MAYWOOD DRIVE, MASTIC BEACH, NY  11951

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $172,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due and owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written.

WELLS FARGO BANK, N.A.
On  02/18/2014

By: _____
George Wellock
Vice President Loan Documentation

STATE OF  Minnesota
COUNTY OF  Hennepin

On the  18th  day of  February  in the year  2014  before me, the undersigned,
personally appeared  George Wellock , Vice President Loan Documentation, personally
known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before
the undersigned in the County of   Hennepin , State of  Minnesota .

WITNESS my hand and official seal,

_____
Michelle Rae Petersen
Notary Expires:  1/31/2017
State of  Minnesota      County of  Hennepin

[Notary Seal: MICHELLE RAE PETERSEN  NOTARY PUBLIC-MINNESOTA  My Commission Expires Jan. 31, 2017]

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

Georgia Candemeres Otero
aka Georgia Candemeres, aka Georgia Otero

Debtor.

Case No.: 19-12834-smb
(Chapter 7)

Assigned to:
Hon. Stuart M. Bernstein
Bankruptcy Judge

---

### RELIEF FROM STAY - REAL ESTATE AND COOPERATIVE APARTMENTS

I ____ **David Ha** ____ A/AN ____ **Assistant Secretary** ____ OF Rushmore Loan Management Services,
LLC, (HEREINAFTER, "MOVANT") HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS MOTION: 195 Maywood Drive, Mastic Beach, NY 11951

2. LENDER NAME: Rushmore Loan Management Services, LLC as servicing agent for U.S. Bank, National Association as Legal Title Trustee for Truman 2013 SC4 Title Trust

3. DATE OF MORTGAGE: February 15, 2008

4. POST-PETITION PAYMENT ADDRESS: Rushmore Loan Management Services
P.O. Box 52708
Irvine, CA 92619-2708

---

### DEBT/VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $391,423.39 (good through September 17, 2019)
(Note: this amount may not be relied on as a "payoff" quotation.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY: $155,000.00

7. SOURCE OF ESTIMATED VALUATION: BPO

## STATUS OF DEBT AS OF
## THE PETITION DATE

8. TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING
DATE: (Good through September 17, 2019)                            $391,423.39

    A. AMOUNT OF PRINCIPAL:                              $169,580.34

    B. AMOUNT OF INTEREST:                               $107,785.99

    C. AMOUNT OF ESCROW (TAXES AND INSURANCE):           $73,479.48

    D. AMOUNT OF FORCED PLACED INSURANCE
    EXPENDED BY MOVANT:                                  $7,147.92

    E. AMOUNT OF ATTORNEYS' FEES BILLED
    TO DEBTOR(S) PRE-PETITION:                           $30,970.84

    F. AMOUNT OF PRE-PETITION LATE FEES, IF ANY,
    BILLED TO DEBTOR(S):                                 $1,901.90

9. CONTRACT INTEREST RATE: Fixed 6.125%

10. PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED
TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE:

    Pre-Petition Attorney Costs          $5,192.34
    Property Inspection Fees             $1,237.50
    Property Preservation Fees           $1,275.00

## AMOUNT OF POST-PETITION DEFAULT (09/17/2019)

11. DATE LAST PAYMENT WAS RECEIVED: No post-petition payments received.

12. ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION
THROUGH PAYMENT DUE ON 09/01/2019:  AS THIS IS A CHAPTER 7 CASE, THERE ARE NOW A
TOTAL OF 124 CONTRACTUAL PAYMENTS NOW DUE.

13. PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| * 06/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 07/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 08/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 09/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 10/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 11/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 12/01/2009 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 01/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| * 02/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 03/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 04/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 05/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 06/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 07/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2010 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2011 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 10/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 11/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 12/01/2012 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 01/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 02/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 03/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 04/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 05/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 06/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 07/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 08/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 09/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 10/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 11/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 12/01/2013 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 01/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 02/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 03/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| * 04/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |

| | | | | | |
|---|---|---|---|---|---|
| * 05/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2014 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2015 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2016 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2017 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |

| | | | | | |
|---|---|---|---|---|---|
| * 08/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 10/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 11/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 12/01/2018 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 01/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 02/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 03/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 04/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 05/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 06/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 07/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 08/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $20.90 |
| * 09/01/2019 | $1,708.11 | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| TOTALS | $211,805.64 | 0.00 | 0.00 | 0.00 | 0.00 | $1,901.90 |

* AS THIS IS A CHAPTER 7, THERE ARE ALSO 124 PRE-PETITION MONTHLY MORTGAGE PAYMENTS NOW DUE AS LISTED ABOVE.

14. AMOUNT OF MOVANT'S ATTORNEYS FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $750.00

15. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $181.00

16. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17 AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $0.00

18. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: ($0.00)

| Debtor Suspense | $0.00 |
|---|---|
| Trustee Suspense | $0.00 |

21. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.: $0.00

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH THE DOCUMENTS.

    1. COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

    2. COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

    3. COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED.  FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED.  (EXHIBIT A.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS, THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS: _____.

### DECLARATION

**David Ha**                          **Assistant Secretary**

I, _____ A/AN _____ OF RUSHMORE LOAN MANAGEMENT SERVICES, LLC AS SERVICING AGENT FOR U.S. BANK, NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2013 SC4 TITLE TRUST HEREBY DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _____     **IRVINE, CA**   <CITY/TOWN>, ____   <STATE> ON THIS 14 DAY OF

Nov , 20 19

<SIGNATURE>

**David Ha**

<PRINT NAME>

**Assistant Secretary**

<TITLE>

RUSHMORE LOAN MANAGEMENT SERVICES, LLC AS SERVICING AGENT FOR U.S. BANK, NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2013 SC4 TITLE TRUST

15480 LAGUNA CANYON ROAD, SUITE 100

IRVINE, CA 92618

# DRIVE-BY BPO

by ClearCapital

Brokers Price Opinion

**195 Maywood Dr**
Mastic Beach, NY 11951

Loan Number

**$155,000**

⬤ As-Is Value

Please Note: This report was completed with the following assumptions: Market Approach **Fair Market Price** , Marketing Time: **Typical**   Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | |
|---|---|---|---|
| Address | 195 Maywood Drive, Mastic Beach, NY 11951 | Order ID | |
| Inspection Date | 05/28/2019 | Date of Report | 05/29/2019 |
| Loan Number | | APN | |
| Borrower Name | GEORGIA CANDEMERES | County | Suffolk |

**Tracking IDs**

| | | | |
|---|---|---|---|
| Order Tracking ID | | | |
| Tracking ID 2 | | Tracking ID 1 | |
| | | Tracking ID 3 | |

## General Conditions

| | |
|---|---|
| Owner | GEORGIA CANDEMERES |
| R. E. Taxes | $8,092 |
| Assessed Value | $219,780 |
| Zoning Classification | residential |
| Property Type | SFR |
| Occupancy | Occupied |
| Ownership Type | Fee Simple |
| Property Condition | Average |
| Estimated Exterior Repair Cost | $0 |
| Estimated Interior Repair Cost | $0 |
| Total Estimated Repair | $0 |
| HOA | No |
| Est. Monthly Rental | $1,700/month |
| Visible From Street | Visible |
| Road Type | Public |

**Condition Comments**

subject is in average condition and is maintained without exterior damages.subject conforms to the neighborhood.

## Neighborhood & Market Data

| | |
|---|---|
| Location Type | Suburban |
| Local Economy | Stable |
| Sales Prices in this Neighborhood | Low: $47,000<br>High: $340,000 |
| Market for this type of property | Remained Stable for the past 6 months. |
| Normal Marketing Days | <180 |

**Neighborhood Comments**

subject is in an average neighborhood with most homes maintained.subject is close to schools,main roads,shopping and parks.there is an upward trend in reo and short sale activity.

# DRIVE-BY BPO
by ClearCapital

195 Maywood Dr
Mastic Beach, NY 11951

Brokers Price Opinion — Pg 2 of 14

Loan Number

**$155,000**
● As-Is Value

| | Subject | Listing 1 | Listing 2 | Listing 3 * |
|---|---|---|---|---|
| **Current Listings** | | | | |
| Street Address | 195 Maywood Drive | 354 Elm Rd | 43 Pinewood Dr | 62 Magnolia Dr . |
| City, State | Mastic Beach, NY | Mastic Beach, NY | Mastic Beach, NY | Mastic Beach, NY |
| Zip Code | 11951 | 11951 | 11951 | 11951 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 0.35 ¹ | 0.24 ¹ | 0.81 ¹ |
| Property Type | SFR | SFR | SFR | SFR |
| Original List Price $ | $ | $160,000 | $169,990 | $175,000 |
| List Price $ | -- | $160,000 | $164,990 | $160,000 |
| Original List Date | | 05/22/2019 | 10/26/2018 | 03/11/2019 |
| DOM · Cumulative DOM | -- · -- | 5 · 7 | 185 · 215 | 70 · 79 |
| Age (# of years) | 61 | 67 | 69 | 59 |
| Condition | Average | Average | Average | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | 1 Story ranch | 1 Story ranch | 1 Story ranch | 1 Story ranch |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 1,000 | 1,100 | 1,000 | 1,000 |
| Bdrm · Bths · ½ Bths | 3 · 1 | 2 · 1 · 1 | 2 · 1 | 3 · 1 |
| Total Room # | 5 | 5 | 5 | 5 |
| Garage (Style/Stalls) | None | Attached 1 Car | None | Detached 1 Car |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | -- | -- | -- | -- |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | .27 acres | .45 acres | .11 acres | .28 acres |
| Other | patio | deck | -- | porcch,deck |

* Listing 3 is the most comparable listing to the subject.
¹ Comp's "Miles to Subject" was calculated by the system.
² Comp's "Miles to Subject" provided by Real Estate Professional.
³ Subject $/ft based upon as-is sale price.

| Listing Comments | Why the comparable listing is superior or inferior to the subject. |
|---|---|
| Listing 1 | listing comp one is equal to subject in room count,gla and superior in acerage,garage,extra bathroom. |
| Listing 2 | listing comp two is equal to subject in room count,gla and inferior in acerage. |
| Listing 3 | listing comp three is equal to subject in room count,gla and acerage and superiro with garage. |

# DRIVE-BY BPO

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-

by ClearCapital

Brokers Price Opinion    195 Maywood Dr
Mastic Beach, NY 11951

**$155,000**

Loan Number    ● As-Is Value

| Recent Sales | | | | |
|---|---|---|---|---|
| | **Subject** | **Sold 1** | **Sold 2** | **Sold 3** * |
| Street Address | 195 Maywood Drive | 174 Woodside Dr | 135 Cedar Rd | 61 Lynbrook Dr |
| City, State | Mastic Beach, NY | Mastic Beach, NY | Mastic Beach, NY | Mastic Beach, NY |
| Zip Code | 11951 | 11951 | 11951 | 11951 |
| Datasource | Tax Records | Public Records | MLS | MLS |
| Miles to Subj. | -- | 0.15 ¹ | 0.93 ¹ | 0.74 ¹ |
| Property Type | SFR | SFR | SFR | SFR |
| Original List Price $ | -- | $165,000 | $159,000 | $149,500 |
| List Price $ | -- | $165,000 | $159,000 | $149,000 |
| Sale Price $ | -- | $165,000 | $140,000 | $145,000 |
| Type of Financing | | Cash | Conv | Fha |
| Date of Sale | | 03/12/2019 | 09/21/2018 | 09/24/2018 |
| DOM · Cumulative DOM | -- · -- | 90 · 158 | 55 · 139 | 42 · 107 |
| Age (# of years) | 61 | 60 | 69 | 89 |
| Condition | Average | Average | Average | Good |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | 1 Story ranch | 1 Story ranch | 1 Story ranch | 1 Story ranch |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 1,000 | 1,000 | 1,004 | 975 |
| Bdrm · Bths · ½ Bths | 3 · 1 | 3 · 1 | 3 · 1 | 3 · 1 |
| Total Room # | 5 | 5 | 5 | 5 |
| Garage (Style/Stalls) | None | None | None | None |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | | -- | -- | -- |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | .27 acres | .23 acres | .46 acres | .15 acres |
| Other | patio | porch | porch | deck |
| Net Adjustment | -- | $0 | $0 | +$7,800 |
| Adjusted Price | -- | $165,000 | $140,000 | $152,800 |

* Sold 3 is the most comparable sale to the subject.
¹ Comp's 'Miles to Subject' was calculated by the system.
² Comp's 'Miles to Subject' provided by Real Estate Professional.
³ Subject $/ft based upon as-is sale price.

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.
**Sold 1**  sold comp one is equal to subject in room count and gla and acreage and superior with garage-5000.
**Sold 2**  sold comp two is equal to subject in room count and gla and acreage.
**Sold 3**  sold comp three is equal to subject in room count and gla and inferior in acreage+5000,inferior in age+2800.

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-

# DRIVE-BY BPO
Brokers Price Opinion

795 Maywood Dr
Mastic Beach, NY 11951

Loan Number

**$155,000**
⊙ As-Is Value

by ClearCapital

## Subject Sales & Listing History

| Current Listing Status | Not Currently Listed | Listing History Comments |
|---|---|---|
| Listing Agency/Firm | | subject has not been listed or sold in the past twelve months. |
| Listing Agent Name | | |
| Listing Agent Phone | | |
| # of Removed Listings in Previous 12 Months | 0 | |
| # of Sales in Previous 12 Months | 0 | |

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| **Suggested List Price** | $160,000 | $160,000 |
| **Sales Price** | $155,000 | $155,000 |
| **30 Day Price** | $145,000 | -- |
| **Comments Regarding Pricing Strategy** | | |

I went back 12 months, out in distance 1 miles, and even with relaxing search criteria I was unable to find any comps which fit the exact requirements. Within 1 miles and back 12 months I found 6 comps of which I could only use due to similar factors. The comps used are the best possible currently available comps within 1 miles and the adjustments are sufficient for this area to account for the differences in the subject and comparables.9 Seaford Rd, Mastic Beach, NY 11951 ,3 bd,2 bth 1122sqft 29 Robinwood Dr, Mastic Beach, NY 11951 ,2 story,4bd,2bt,1152sqft 174 Woodside Rd, Mastic Beach, NY 11951 ,has been renovated ,there is not a current sold mls sheet for this. these comps are not comparible to subject in condition and gla.

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:02:45    Exhibit C-

# DRIVE-BY BPO
by ClearCapital

Brokers Price Opinion    195 Maywood Dr
Mastic Beach, NY 11951

Loan Number        ● As-Is Value

**$155,000**

## Clear Capital Quality Assurance Comments Addendum

| | |
|---|---|
| **Reviewer's Notes** | The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported. |

# DRIVE-BY BPO
by ClearCapital

Brokers Price Opinion

895 Maywood Dr
Mastic Beach, NY 11951

Loan Number

**$155,000**

⊙ As-Is Value

## Subject Photos



Front



Address Verification



Side



Side



Street



Street

# DRIVE-BY BPO

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:02:45    Exhibit C-

by ClearCapital

**195 Maywood Dr**
Mastic Beach, NY 11951
Brokers Price Opinion    Pg 7 of 19

| | | **$155,000** |
|---|---|---|
| Loan Number | | As-Is Value |

---

## Listing Photos

**L.1** 354 elm rd
Mastic Beach, NY 11951



Front

**L.2** 43 Pinewood Dr
Mastic Beach, NY 11951



Front

**L.3** 62 Magnolia Dr ,
Mastic Beach, NY 11951



Front

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:02:45    Exhibit C-
Brokers Price Opinion    Pg 8 of 19

# DRIVE-BY BPO

by ClearCapital

**195 Maywood Dr**
Mastic Beach, NY 11951

Loan Number    **$155,000**
● As-Is Value

## Sales Photos

**S1** 174 woodside dr
Mastic Beach, NY 11951



Front

**S2** 135 Cedar Rd
Mastic Beach, NY 11951



Front

**S3** 61 Lynbrook Dr
Mastic Beach, NY 11951



Front

# DRIVE-BY BPO

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-

195 Maywood Dr
Mastic Beach, NY 11951

**$155,000**

Brokers Price Opinion

by ClearCapital

Loan Number    ● As-Is Value

**ClearMaps Addendum**

| Address | ★ 195 Maywood Drive, Mastic Beach, NY 11951 | | |
|---|---|---|---|
| Loan Number | 7600027134 | Suggested List  $160,000 | Suggested Repaired  $160,000 | Sale  $155,000 |



SUBJECT: 195 Maywood Dr, Mastic Beach, NY 11951

| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ★ | Subject | 195 Maywood Dr, Mastic Beach, NY | -- | Parcel Match |
| L1 | Listing 1 | 354 Elm Rd, Mastic Beach, NY | 0.35 Miles [1] | Street Centerline Match |
| L2 | Listing 2 | 43 Pinewood Dr, Mastic Beach, NY | 0.24 Miles [1] | Street Centerline Match |
| L3 | Listing 3 | 62 Magnolia Dr ,, Mastic Beach, NY | 0.81 Miles [1] | Street Centerline Match |
| S1 | Sold 1 | 174 Woodside Dr, Mastic Beach, NY | 0.15 Miles [1] | Parcel Match |
| S2 | Sold 2 | 135 Cedar Rd, Mastic Beach, NY | 0.93 Miles [1] | Parcel Match |
| S3 | Sold 3 | 61 Lynbrook Dr, Mastic Beach, NY | 0.74 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-
Pg 10 of 19

# DRIVE-BY BPO

by ClearCapital

**Brokers Price Opinion**

195 Maywood Dr
Mastic Beach, NY 11951

Loan Number

**$155,000**
● As-Is Value



| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ☆ | Subject | 195 Maywood Dr, Mastic Beach, NY | -- | Parcel Match |
| L1 | Listing 1 | 354 Elm Rd, Mastic Beach, NY | 0.35 Miles ¹ | Street Centerline Match |
| L2 | Listing 2 | 43 Pinewood Dr, Mastic Beach, NY | 0.24 Miles ¹ | Street Centerline Match |
| L3 | Listing 3 | 62 Magnolia Dr ,, Mastic Beach, NY | 0.81 Miles ¹ | Street Centerline Match |
| S1 | Sold 1 | 174 Woodside Dr, Mastic Beach, NY | 0.15 Miles ¹ | Parcel Match |
| S2 | Sold 2 | 135 Cedar Rd, Mastic Beach, NY | 0.93 Miles ¹ | Parcel Match |
| S3 | Sold 3 | 61 Lynbrook Dr, Mastic Beach, NY | 0.74 Miles ¹ | Parcel Match |

¹ The Comparable 'Distance from Subject' value has been calculated by the Clear Capital system
² The Comparable 'Distance from Subject' value has been provided by the Real Estate Professional

# DRIVE-BY BPO

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-

by ClearCapital

Brokers Price Opinion · Pg 11 of 15

195 Maywood Dr
Mastic Beach, NY 11951

7600027134
Loan Number

$155,000
⊙ As-Is Value

## Addendum: Report Purpose

## Market Approach and Market Time

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

Definitions:

| | |
|---|---|
| Fair Market Price | A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts |
| Distressed Price | A price at which the property would sell between a willing buyer and a seller acting under duress |
| Marketing Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-
Pg 13 of 19

DRIVE-BY BPO    Brokers Price Opinion    1795 Maywood Dr    $155,000
by ClearCapital    Mastic Beach, NY 11951    Loan Number ⊛ As-Is Value

---

### Addendum: Report Purpose - cont

## Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
Instructions last updated: 11/28/2018
Purpose:

Please determine a fair market price for this property at which it would sell in a typical marketing time for the area.

Documentation Requirements:

1. It is required that you please include the subject's MLS sheet if the subject is currently listed for sale or was listed for sale in the past 36 months and expired, canceled, taken off market, etc
2. It is required that you please include the MLS sheets (full sheets including photos) for all listing and sold comps used in the report if the comparables were pulled from the MLS.
3. It is required that you please upload the MLS sheets individually. The system will NOT recognize the correct number of MLS sheets if they are grouped together.

Customer Specific Instructions:
If the subject is currently listed, or has been listed at any point within the last 36 months, it is required that the MLS sheet for the subject is uploaded into the Docs and Data Tab.

1. Our mutual customer has supplied subject characteristics to be utilized in the report. Please utilize these characteristics, unless they are in accurate, (i.e. remodeled with addition, home torn down and rebuilt, etc.)****
2. Comp proximity is this client's primary focus. Other search parameters can be expanded in order to provide comps from the subject's immediate neighborhood. If distance must be expanded, please provide a detailed explanation.
3. Our customer has asked that the tax records and MLS sheet for the subject is uploaded to the document center. If you cannot locate the subjects MLS sheet, please comment in the body of the report.
4. Our customer has supplied some information regarding the subject that should be used in locating the subject. Please review the borrower name and APN supplied by the customer. If this information is not present in the report, please comment on how the tax records were located in the body of the report.
5. Please state your search findings in the body of the report as follows: I went back XX months, out in distance XX miles, and even with relaxing XXX search criteria I was unable to find any comps which fit the XXX requirements. Within XX miles and back XX months I found XX comps of which I could only use XX due to XXX factors. The comps used are the best possible currently available comps within XX miles and the adjustments are sufficient to this area to account for the differences in the subject and comparables.
6. Please give a breakdown of any and all adjustments applied to the comparables. For example, "GLA -/+$XXX, Lot size -/+ $XXX, etc.)
7. Please take photos of any notices on the subject, and comment on them in the report. If you can not get close enough to read what is contained in the notice, then comment on this as well.

Comparable Requirements:

1. Please use fair market comps from the same neighborhood, block or subdivision whenever possible.
2. Please only use REO comparables if the market is driven by REOs and they are comparable in characteristics and condition.
3. Please use comps that have closed in the past 3 months to show the current market conditions or comment in the report if this is not possible. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.


Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-
Pg 13 of 14

# DRIVE-BY BPO

Brokers Price Opinion

95 Maywood Dr
Mastic Beach, NY 11951

by ClearCapital

Loan Number    **$155,000**
                ⦿ As-Is Value

## Report Instructions - con.

sufficient detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as neighborhood desirability, amenities, parks, schools, commercial or industrial influences, REO activity, traffic, board-up-homes, etc.

5. Do not approach occupants or owners.

6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report.

7. Please do not accept if you or your office has completed a report on this property in the last 6 months, are currently listing this property, or have any vested interest in the subject property.

8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.

9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the aforementioned tasks is not permitted.

Due to the importance of an independent opinion of price, please do not discuss your price with anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.

Properties in Puerto Rico:

It is required that you have access to the following data sources and include the data sheets (full sheets including photos) for the subject as well as all listing and sold comps, from these sources used in the report. If you do not have access to these systems, please contact Clear Capital right away:

- Clasificadosonline.com
- www.luisabreu.com
- www.tasamax.com

Please provide detailed commentary and the data sheets, if other sources were used. The commentary should explain why one of the listed sources was not used in the comparable search.

Photo Instructions:

In the case of camera malfunction and/ or if an inspector fails to inspect the interior of the property, is is prohibited to request another individual for photos.

1. Photos should be clear of car window glare, door frames, and mirrors. Please step outside of the vehicle when taking photos.
2. Current and original photos of all sides of the subject (back of the subject in available)
3. Damages (upload enough photos to support your repair cost estimates)
4. Please provide close up photos of the subjects roof
5. Two street scene photos, one looking each direction down the street
6. One view photo looking across the street from the subject
7. One address verification photo
8. MLS photos of all (3) sold comparables, if available
9. MLS photos of all (3) listing comparables, if available

# DRIVE-BY BPO

19-12834-smb    Doc 22-4    Filed 11/20/19    Entered 11/20/19 16:03:45    Exhibit C-

95 Mangrove Dr
Mastic Beach, NY 11951

by ClearCapital

Brokers Price Opinion

| Loan Number | $155,000 |
| --- | --- |
| | ● As-Is Value |

## Broker Information

| | | | |
| --- | --- | --- | --- |
| Broker Name | Robin Gasparik | Company/Brokerage | sparrow realty |
| License No | ▮▮▮▮ | Address | 116 jerusalem hollow rd manorville NY 11949 |
| License Expiration | 09/04/2020 | License State | NY |
| Phone | ▮▮▮▮ | Email | ▮▮▮▮ |
| Broker Distance to Subject | 5.64 miles | Date Signed | 05/28/2019 |

By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.

## Disclaimer

This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose.

Unless otherwise specifically agreed to in writing:
The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.

**354 Elm Rd, Mastic Beach, NY 11951**    List Price: $160,000



| | | |
|---|---|---|
| ML#: ████ | Residential    1 Family, Det | LSC: NEW |

| | | |
|---|---|---|
| Sec/Area: | Ranch | Zone: 25 |
| Devel: | Rooms: 5 | |
| Schools: 32    William Floyd | Br: 2 | MBR 1st Floor: Y |
| Taxes: $6,445.30    Vill Tax: $870.74 | Baths Full: 1 | Half: 1 |
| Total Taxes: $7,316.04 | Basement: Part | Fin Bsmt: |
| Taxes w/Basic STAR: | Lot Size: 96x200 | |
| Dis: 209    Sec: | Lot Sqft: 19200 | |
| Block: 9008    Lot: 9 | Zoning: | |
| Adult Comm: N    Gated Prop: | | |
| Beach Rts:    Dock Rts: | | |

Cross Street: Hackensack

Walk Score®: 15

Directions: S/W/ corner of Elm Road & Hackensack Rd.

Remarks: Two Bedroom 1 & 1/2 Bth Ranch featuring Living Room, Eik, Den or possible 3rd Bedroom, Garage and partial Basement located on large property.Low Taxes

Property Description: Two Bedroom 1 & 1/2 Bth Ranch featuring Living Room, Eik, Den or possible 3rd Bedroom, Garage and partial Basement located on large property.Low Taxes

| Property Info | Rooms/Interior | Appliances/Utilities | Exterior |
|---|---|---|---|
| Appx Yr Built: 1952 | # Kitchens: 1 | Stove: Y | Garage: 1, att |
| New Constr: N | Eat In Kitchen: Y | Refrigerator: Y | Driveway: Pvt |
| Construction: Frame | DiningRm: None | Dishwasher: N | Porch: |
| Front Expose: | Den/Fam Rm: Y | Washer: Y | Patio: |
| Cul-De-Sac:    Corner: | Office: N | Dryer: Y | Deck: Yes |
| Horse Prop: | Attic: Y | A/C: N | Pool: N |
| Appearance: | Apx Int Sqft: | Heat: Oil, Ha | Tennis Ct: |
| Waterfront: N | Wood Firs: Y | Heat Zones: 1 | Ing Sprinks: |
| Waterview: N | W/W Carpet: N | Sep HW Heater: | Building Size: |
| Water Frtage: | Fireplaces: 0 | Permit: | Water: Public |
| Bulkhead: | Skylight: | | Sewer: |

| | |
|---|---|
| Bsmt/Subfl: Partial | |
| 1st Floor: Lr, Eik,2 Bedrms, Den, 1 & 1/2 Baths | Also For Rent: N |
| 2nd Floor: | Rental Income: |
| 3rd Floor: | Short Sale: N |
| Personal Property Exclusions: | REO: N |
| | Supersedes ML#: |
| Energy Efficient Feature: N | |

| | | |
|---|---|---|
| List Date: 5/22/2019 | Original LP: $160,000 | Seller Agency Comp: 0 |
| Exp Date: 5/20/2020 | Prior LP: | Buyer Agency Comp: 2.5 |
| | List Price: $160,000 | Broker Agency Comp: 2.5 |
| | Owner Financing: | Listing Broker Comp (For Rental): |
| | Broker/Agent Owned: N | Buyer Exclusions: N |
| | | Offers of compensation are for MLSLI Participants only. |

| | | |
|---|---|---|
| Occupancy:    Owner: Gerhauser | | Offers: Can be Present |
| List Broker: Moriches Bay Realty ( SARK01 )    631-878-0003 | | Show Instr: By Appointment |
| List Agent: Sapanaro, Geraldine S    631-241-6747 | | Status/Show#: 631-878-0003 |
| | | Lockbox:    Neg Dir: N |

**43 Pinewood Dr, Shirley, NY 11967**    List Price: **$164,990**



| | | |
|---|---|---|
| ML#: ▮ | Residential | 1 Family, Det | LSC: UC |

| | | |
|---|---|---|
| Sec/Area: Shirley | Ranch | Zone: 25 |
| Devel: Shirley | Rooms: 4 | |
| Schools: 32    William Floyd | Br: 2 | MBR 1st Floor: Y |
| Taxes: $4,700.00    Vill Tax: | Baths Full: 1 | Half: 0 |
| Total Taxes: $4,700.00 | Basement: Crawl | Fin Bsmt: N |
| Taxes w/Basic STAR: | Lot Size: 0X0 | |
| Dis: 209    Sec: 2400 | Lot Sqft: 4792 | |
| Block: 300    Lot: 64000 | Zoning: Res | |
| Adult Comm: N    Gated Prop: N | Flood Zone A, AE or V: | |
| Beach Rts: N    Dock Rts: N | | |

Cross Street: Oakwood                                                    Walk Score®: 26

Directions: William Floyd To Havenwood Head East To Oakwood Make A Right Go To The End Make A Right On Pinewood House On The Left

Remarks: Charming 2 Bedroom Home, Nice Property All Offers Must be in writing and Have a Pre-approval for Mortgage or Proof of funds for Cash

Property Description: Charming 2 Bedroom Home, Nice Property, Many Upgraded Features

| Property Info | Rooms/Interior | Appliances/Utilities | Exterior |
|---|---|---|---|
| Appx Yr Built: 1950 | # Kitchens: 1 | Stove: Y | Garage: N |
| New Constr: N | Eat In Kitchen: Y | Refrigerator: N | Driveway: Pvt |
| Construction: Frame | DiningRm: None | Dishwasher: N | Porch: None |
| Front Expose: S | Den/Fam Rm: Y | Washer: N | Patio: None |
| Cul-De-Sac: N    Corner: N | Office: N | Dryer: N | Deck: |
| Horse Prop: N | Attic: N | A/C: N | Pool: N, None |
| Appearance: Mint | Apx Int Sqft: | Heat: Gas, Ha | Tennis Ct: N, None |
| Waterfront: N | Wood Flrs: N | Heat Zones: 1 | Ing Sprink: |
| Waterview: N | W/W Carpet: Y | Sep HW Heater: Y | Building Size: |
| Water Frtage: 0 | Fireplaces: 0 | Permit: | Water: Public |
| Bulkhead: N | Skylight: 0 | | Sewer: N |

| | |
|---|---|
| Bsmt/Subfl: | |
| 1st Floor: Liv Elk 2 Bedrooms Bath | Also For Rent: N |
| 2nd Floor: | Rental Income: |
| 3rd Floor: | Short Sale: N |
| Personal Property Exclusions: | REO: N |
| | Supersedes ML#: |
| Energy Efficient Feature: N | |

| | | |
|---|---|---|
| List Date: 10/26/2018 | Sold Price: | Org. LP: $169,990 |
| Exp Date: 6/25/2019 | % Difference: | Prior LP: $169,990 |
| UC Date: 4/29/2019 | Mortgage Type: | List Price: $164,990 |
| Prop Title Dte: 6/03/2019 | Final Mort: | Contr Price: |
| Title Date: | DOM: 185 | Owner Finance: N |
| | | Brkr/Agent Own: N |
| Sell Agcy Comp: 2 | | |
| Buyer Agcy Comp: 2 | | |
| Brkr Agcy Comp: 2 | | |
| List Brkr Comp (For Rental): | | |
| Buyer Exclusions: Y | | |
| Offers of compensation are for MLSLI Participants only. | | |

| | |
|---|---|
| List Broker: Stanzoni Realty Corp ( STNZ01) | Owner: Economou |
| List Agent: Grinere, Diane | Purchaser: |
| Co-List Agt: Stanzoni, Robert J | Moved From: |
| Sell Broker: Coldwell Banker M&D Good Life ( MJM 02) | |
| Sell Agent: Sharkey, Therese C tf | |

# Brokers Price Opinion

**62 Magnolia Dr, Mastic Beach, NY 11951**    List Price: **$160,000**

| ML#: | Residential | 1 Family, Det | LSC: PC |
|---|---|---|---|



| | |
|---|---|
| Sec/Area: | Ranch    Zone: 25 |
| Devel: | Rooms: 6 |
| Schools: 32    William Floyd | Br: 3    MBR 1st Floor: Y |
| Taxes: $7,969.20    Vill Tax: | Baths Full: 1    Half: 0 |
| Total Taxes: $7,969.20 | Basement: Crawl    Fin Bsmt: N |
| Taxes w/Basic STAR: | Lot Size: 120x100 |
| Dis: 209    Sec: 2600 | Lot Sqft: 11761 |
| Block: 500    Lot: 7000 | Zoning: |
| Adult Comm: N    Gated Prop: | |
| Beach Rts:    Dock Rts: | Walk Score®: 5 |

**Cross Street:** Elm Rd W

**Directions:** Elm Rd W to Magnolia

**Remarks:** 3 Bedroom, 1 Bath Ranch Located close to Bay and Marina. 4 Ft. Crawl Space with concrete Floor, dry and perfect for storage. Offers Screened Porch, Newer Windows, New Flooring, New Pellet Stove and oversized garage. house heated with propane. Just steps from Moriches Bay and Minutes from Smith Point Beach. Cash deal preferred

**Property Description:** The Charm of a Cottage w/ the Space of a Ranch House. 3 Bedrooms & 1 Full Spacious Bathroom. Nicely Updated W/ Newer Windows, New Flooring, a New Pellet Stove & Much More. Just Steps from the Marina and the Moriches Bay as well as the Fire Island National Seashore Beaches, this could make a Perfect Year-Round Home! Cash deal preferred

## Property Info / Rooms/Interior / Appliances/Utilities / Exterior

| Property Info | Rooms/Interior | Appliances/Utilities | Exterior |
|---|---|---|---|
| Appx Yr Built: 1960 | # Kitchens: 1 | Stove: y | Garage: 1, Det |
| New Constr: N | Eat In Kitchen: N | Refrigerator: y | Driveway: Pvt |
| Construction: Frame | DiningRm: Lr/Dr | Dishwasher: n | Porch: Screened |
| Front Expose: | Den/Fam Rm: N | Washer: y | Patio: |
| Cul-De-Sac: N    Corner: N | Office: N | Dryer: y | Deck: 2 |
| Horse Prop: | Attic: Y | A/C: N | Pool: N |
| Appearance: | Apx Int Sqft: | Heat: Gas, Ha | Tennis Ct: N |
| Waterfront: N | Wood Fire: Y | Heat Zones: 1 | Ing Sprinks: |
| Waterview: N | W/W Carpet: | Sep HW Heater: y | Building Size: |
| Water Frtage: | Fireplaces: 0 | Permit: | Water: |
| Bulkhead: | Skylight: y | | Sewer: N |

**Bsmt/Subfl:** Crawl with Concrete Floor

| | |
|---|---|
| **1st Floor:** Screened Porch, LR/DR, Kitchen, 3 BDRM, 1 Full Bath | **Also For Rent:** N |
| **2nd Floor:** | **Rental Income:** |
| **3rd Floor:** | **Short Sale:** N |
| **Personal Property Exclusions:** | **REO:** N |
| **Energy Efficient Feature:** N | **Supersedes ML#:** |

| | | |
|---|---|---|
| List Date: 3/11/2019 | Original LP: $175,000 | Seller Agency Comp: 0 |
| Exp Date: 3/11/2020 | Prior LP: $175,000 | Buyer Agency Comp: 2 |
| | List Price: $160,000 | Broker Agency Comp: 2 |
| | Owner Financing: | Listing Broker Comp (For Rental): |
| | Broker/Agent Owned: N | Buyer Exclusions: N |
| | | Offers of compensation are for MLSLI Participants only. |

| | |
|---|---|
| Occupancy: On Title    Owner: Timm | Offers: Can be Present |
| List Broker: Coldwell Banker M&D Good Life ( MJM01) | Show Instr: By |
| List Agent: Ferraro, Joseph | Status/Show#: |
| Co-List Agt: McCarthy, Susan M | Lockbox:    Neg Dir: N |

Prepared by: Robin Gasparik    RE/MAX Sparrow Realty    (631) 878-2300
robga999@netscape.net    05/28/2019 10:00 AM
Information supplied by third parties and not by Multiple Listing Service of Long Island,Inc.
Information Copyright 2019, Multiple Listing Service of Long Island, Inc.

**135 Cedar Rd, Mastic Beach, NY 11951** Brokers Price Opinion    Pg 1 of 3    **Sold Price: $140,000**



| | |
|---|---|
| ML#: ▓▓▓▓ | Residential    1 Family, Det    LSC: CL |

| Sec/Area: | |
|---|---|
| Devel: | Ranch    Zone: 25 |
| Schools: 32    William Floyd | Rooms: 5 |
| Taxes: $4,774.53    Vill Tax: | Br: 3    MBR 1st Floor: Y |
| Total Taxes: $4,774.53 | Baths Full: 1    Half: 0 |
| Taxes w/Basic STAR: | Basement: None    Fin Bsmt: N |
| Dis: 200    Sec: 97900 | Lot Size: 0.46 Acres |
| Block: 800    Lot: 33000 | Lot Sqft: 20037 |
| Adult Comm: N    Gated Prop: N | Zoning: |
| Beach Rts: N    Dock Rts: | Flood Zone A, AE or V: |

Cross Street: Jefferson

Walk Score® 19

Directions: Neighborhood Rd Right Turn Into Jefferson To Corner Cedar Road.

Remarks: Acceptable Offer Still Showing. Information Is Not Guaranteed. Prospective Buyer Should Verify All Information. No Commission Is Due Or Payable To Cooperating Broker Until Title Passes To Party By Cooperating Broker All Offers Must Be In Writing With Pre-Approval Sent To Lb Via Email Hrothberg@C21Amhomes.Com This Property Is Being Sold With Additional Lot Of 0.23 Acres.

Property Description: Fabulous Ranch, Eat In Kitchen, 3 Bedrooms Spacious Master Bedroom. Lots Of Closet Space, Vaulted Ceiling In Living Room. Nature Light Throughout.. Unlimited Possibilities Includes Additional Lot Of 0.23 Acres.

| Property Info | Rooms/Interior | Appliances/Utilities | Exterior |
|---|---|---|---|
| Appx Yr Built: 1950 | # Kitchens: 1 | Stove: 1 | Garage: |
| New Constr: N | Eat In Kitchen: Y | Refrigerator: 1 | Driveway: Pvt |
| Construction: Frame | DiningRm: None | Dishwasher: 0 | Porch: Yes |
| Front Expose: | Den/Fam Rm: N | Washer: 1 | Patio: |
| Cul-De-Sac: N    Corner: Y | Office: N | Dryer: 1 | Deck: |
| Horse Prop: N | Attic: Y | A/C: N | Pool: N |
| Appearance: Excellent | Apx Int Sqft: | Heat: Oil, Hw | Tennis Ct: |
| Waterfront: N | Wood Flrs: Y | Heat Zones: 2 | Ing Sprink: |
| Waterview: N | W/W Carpet: N | Sep HW Heater: | Building Size: |
| Water Frtage: | Fireplaces: 0 | Permit: | Water: |
| Bulkhead: | Skylight: | | Sewer: |

| Bsmt/Subfl: | |
|---|---|
| 1st Floor: Large Living Room 3 Bedrooms Full Bathroom Laundry Room. | Also For Rent: N |
| 2nd Floor: | Rental Income: |
| 3rd Floor: | Short Sale: N |
| Personal Property Exclusions: | REO: N |
| Energy Efficient Feature: N | Supersedes ML#: |
| Handicap Accessible: Y, Ramp To Front Door | |

| List Date: 5/05/2018 | Sold Price: $140,000 | Org. LP: $159,000 |
|---|---|---|
| Exp Date: 5/05/2019 | % Difference: 9.7 | Prior LP: $159,000 |
| UC Date: 6/29/2018 | Mortgage Type: Conv | List Price: $155,000 |
| Prop Title Dte: | Final Mort: | Contr Price: $140,000 |
| Title Date: 9/21/2018 | DOM: 55 | Owner Finance: N |
| | | Brkr/Agent Own: N |

| | |
|---|---|
| Sell Agcy Comp: 0 | |
| Buyer Agcy Comp: 2 | |
| Brkr Agcy Comp: 2 | |
| List Brkr Comp (For Rental): | |
| Buyer Exclusions: N | |
| *Offers of compensation are for MLSLI Participants only.* | |

| List Broker: Century 21 American Homes ( BRMN12) | Owner: Cocarrituc |
|---|---|
| List Agent: Rothberg, Helaine R | Purchaser: Durao |
| Sell Broker: Belzak & Bodkin Realty Corp ( B&B 01) | Moved From: Medford |
| Sell Agent: Fama, Samuel J | |

**61 Lynbrook Dr, Mastic Beach, NY 1195** Brokers Price Opinion  Pg 1 Sold Price: $145,000



| | | |
|---|---|---|
| ML#: ▇▇▇ | Residential    1 Family, Det | LSC: CL |

| | | |
|---|---|---|
| Sec/Area: Mastic Beach Village | Ranch | Zone: 25 |
| Devel: | Rooms: 5 | |
| Schools: 32    William Floyd | Br: 3 | MBR 1st Floor: Y |
| Taxes: $5,002.97    Vill Tax: | Baths Full: 1 | Half: 0 |
| Total Taxes: $5,002.97 | Basement: Crawl | Fin Bsmt: N |
| Taxes w/Basic STAR: | Lot Size: 60X100 | |
| Dis: 200    Sec: 98330 | Lot Sqft: 6098 | |
| Block: 700    Lot: 40000 | Zoning: | |
| Adult Comm: N    Gated Prop: | Flood Zone A, AE or V: | |
| | Beach Rts:    Dock Rts: | |

Cross Street: Hickory

Directions: Commack Road To Lynbrook

Walk Score®: 4

Remarks: Deal Died, Buyers Backed Out. All Information Deemed Accurate But Selling Agents/Buyers Should Verify All Information. Great New Listing With Room For Expansion. Owner Is Motivated.

Property Description: The "Biggest" Little Home In The Beautiful Village Of Mastic Beach. 975 Square Feet With A Huge Office That Can Be 3rd Bedroom. Large Attic For Possible Future Expansion. Updated Beautiful Eat In Kitchen With Stainless Steel Appliances, New Cabinets, And Hi Hats. Also, Gas Stove, Large Washer/Dryer, Over-Sized Driveway With Belgium Block, Newer Siding, Roof And Shed. Motivated Owner!

| Property Info | Rooms/Interior | Appliances/Utilities | Exterior |
|---|---|---|---|
| Appx Yr Built: 1930 | # Kitchens: 1 | Stove: Y | Garage: |
| New Constr: N | Eat In Kitchen: Y | Refrigerator: Y | Driveway: Pvt |
| Construction: Vinyl | DiningRm: Lr/Dr | Dishwasher: Y | Porch: |
| Front Expose: | Den/Fam Rm: N | Washer: Y | Patio: |
| Cul-De-Sac:    Corner: | Office: Y | Dryer: Y | Deck: Yes |
| Horse Prop: | Attic: Y | A/C: N | Pool: N |
| Appearance: Mint | Apx Int Sqft: | Heat: Elec, Elec | Tennis Ct: |
| Waterfront: N | Wood Firs: | Heat Zones: | Ing Sprink: |
| Waterview: N | W/W Carpet: | Sep HW Heater: | Building Size: |
| Water Frtage: | Fireplaces: 0 | Permit: | Water: Public |
| Bulkhead: | Skylight: | | Sewer: |

| | |
|---|---|
| Bsmt/Subfl: Crawl | Also For Rent: N |
| 1st Floor: Lr, Large Elk, 2 Bedrooms, Office/Br, Mud Room, Full Bath | Rental Income: |
| 2nd Floor: Large Attic Area With High Ceiling | Short Sale: N |
| 3rd Floor: | REO: N |
| Personal Property Exclusions: | Supersedes ML#: |
| Energy Efficient Feature: N | |

| | | |
|---|---|---|
| List Date: 4/28/2018 | Sold Price: $145,000 | Org. LP: $149,500 |
| Exp Date: 9/09/2018 | % Difference: 2.7 | Prior LP: $149,500 |
| UC Date: 7/03/2018 | Mortgage Type: Fha | List Price: $149,000 |
| Prop Title Dte: 8/15/2018 | Final Mort: | Contr Price: $145,000 |
| Title Date: 9/24/2018 | DOM: 66 | Owner Finance: |
| | | Brkr/Agent Own: N |
| Sell Agcy Comp: 0 | | |
| Buyer Agcy Comp: 2 | | |
| Brkr Agcy Comp: 2 | | |
| List Brkr Comp (For Rental): | | |
| Buyer Exclusions: N | | |
| Offers of compensation are for MLSLI Participants only. | | |

| | | |
|---|---|---|
| List Broker: Summit Realty Group of NY ( STND01) | | Owner: Levering |
| List Agent: Stander, Randy B | | Purchaser: Griffin |
| Co-List Agt: Fiordalisi, Michael P | | Moved From: Bayshore |
| Sell Broker: Coldwell Banker Residential ( CBRB 16) | | |
| Sell Agent: Cabrera, Katherin M | | |

Prepared by: Robin Gasparik    RE/MAX Sparrow Realty    (631) 878-2300
robga999@netscape.net    05/28/2019 9:33 AM
Information supplied by third parties and not by Multiple Listing Service of Long Island, Inc.
Information Copyright 2019, Multiple Listing Service of Long Island, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re:

Georgia Candemeres Otero aka Georgia
Candemeres, aka Georgia Otero

    Debtor.

---

**ORDER**

Case No.: 19-12834-smb
(Chapter 7)

Assigned to:
Hon. Stuart M. Bernstein
Bankruptcy Judge

   Rushmore Loan Management Services, LLC as servicing agent for U.S. Bank, National Association as Legal Title Trustee for Truman 2013 SC4 Title Trust, a secured creditor of Debtor, ("Secured Creditor") having moved this Court for an Order modifying the Automatic Stay in this proceeding by permitting said Secured Creditor to foreclose on the mortgage of premises commonly known as 195 Maywood Drive, Mastic Beach, NY 11951, of which the Debtor is the owner of record, and

   The motion having come to be heard before this Court and no opposition having been submitted by the Chapter 7 Trustee, by the U.S. Trustee, or by the Debtor, and due deliberation having been had, now

   Upon Reading and Filing of the Notice of Motion, the Application of Secured Creditor dated 20th day of November, 2019, and proof of service upon all necessary parties, upon motion of the Office of Gross Polowy, LLC, it is hereby

   ORDERED, that as to the Secured Creditor or its successors or assigns, the automatic stay is terminated, permitting it to foreclose or otherwise pursue its mortgage remedies and rights on the premises commonly known as 195 Maywood Drive, Mastic Beach, NY 11951; and it is further

ORDERED, Movant and/or its successors and assigns may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement. The Movant may contact the Debtor via telephone or written correspondence to offer such an agreement. Any such agreement shall be non-recourse unless included in a reaffirmation agreement. This Order is effective immediately upon entry by this Court notwithstanding the provision of FRBP 4001 (a) (3). This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Bankruptcy Code; and it is further

IT IS HEREBY FURTHER ORDERED that upon entry of this Order, the estate's interest and/or any other interest in the Property located at 195 Maywood Drive, Mastic Beach, NY 11951) is abandoned by Chapter 7 Trustee; and it is further

ORDERED, that the Trustee retain any and all interest that said Trustee may have in any surplus monies that may be produced from a foreclosure sale of the property, and will be noticed of any such sale of the property and surplus money proceedings.

DATED:    New York, New York
_____

_____
Hon. STUART M. BERNSTEIN